## Manual's Adm'r v. W. E. Caldwell & Co.

(Decided Oct. 22, 1937.)

JAMES S. SHAW, MADDOX PARMALEE and D. A. McCAND-LESS for appellant.

L. R. CURTIS for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Appellant sought to recover of appellee, W. E. Caldwell & Co., damages on account of the death of intestate Manual, a colored man, occasioned by injuries received January, 1933, and from which he died in March, 1933. The injury was admittedly received on the premises of the Palmer Asbestos & Rubber Company, the employer of Manual at the time, which company was engaged in the refining or reducing of asphalt to be used in its products. The Caldwell Company was engaged in the manufacture and sale of tanks and boilers.

In the petition filed, administrator alleged in addition to such facts as have been stated above, that while Manual was at work for the asbestos company, "and in the vicinity of and near a tank which had been sold by appellee to his employers, and while he was in the act of melting asphalt compound in said tank, it exploded and burst, throwing hot and molten asphalt upon his body, so injuring him that he later died from the effects." It was said that appellee, the manufacturer and seller of the tank, constructed same in a careless and grossly negligent manner, so that "while he was using same within the scope of his employment," by reason of its improper construction, the tank exploded and caused his injuries, later resulting in his death. It was alleged that the tank as constructed was imminently and inherently dangerous, and appellee knew it was

to be used for the purpose of heating asphalt; that pressure was created by the heating of asphalt compound, and that the contents thereof were dangerous to the life of an employee working in its vicinity, and deceased did not know of the dangerous and defective condition of the furnished tank, and did not know it was so constructed as to be inherently dangerous.

Demurrer to the petition was overruled, and appellee by its answer first denied the averments thereof, and then plead contributory negligence on the part of appellant's intestate. The issues were completed on the pleadings, after reply denying the allegation of contributory negligence. Upon conclusion of proof introduced on behalf of appellant, appellee moved for a directed verdict in its favor, the court overruling same. After all the proof was heard the court gave a series of seven or more instructions to the jury. The jury returned a majority (10) verdict for appellee.

Motion for new trial was overruled, judgment entered for appellee, and appellant prayed and was granted an appeal. The only ground urged here is that the court erroneously instructed the jury to the prejudice of appellant's cause.

At the time of the accident Manual had been employed by appellee for several years, and engaged in the use of the tank in question for three or four months. On the morning of the day on which the explosion occurred, Manual had started the fire under the tank about 6:30, although he had been told not to start it until a later hour. No one save Manual was present at the moment when the tank burst, or "ruptured," as the cause of injury is described in the record. The noise from the rupture was heard by another employee, and he and the superintendent of the asbestos company went at once to the "still room," and found it on fire and filled with smoke. Manual had left the room and was later found in the office. One side of his face was covered with burning asphalt, and later it was discovered that the molten asphalt had gone under his overalls and into his shoes. He was taken to the hospital by the superintendent, where he remained for some time, and later died.

It is not necessary to decribe the tank as minutely as it is described in the evidence. It will suffice to say for the purpose of review, that an officer of the asphalt

company, an engineer of experience, had directed the planning and ordering of this particular tank along with two or three others. This witness passed on the details of the tank as to dimensions, type of welding, couplings, and other requirements. This witness admits that appellee delivered the tank according to order, and as per a blueprint which was furnished the asbestos company by appellee after it received and accepted its order.

In a general way the tank, ordered and delivered, was described as being a rectangular box, made of boiler plate, and about 8 feet long, 4 feet wide, and 3 feet in depth, the sides and bottom being welded together, but without the use of rivets. As ordered and delivered it was an open tank; the fuel to be used was oil; the heat was to be diffused through the tank by means of coils which conducted steam through the mass to be heated. However, after the tank had been used for some time in the manner and condition above described, inside the building it was taken outside the building and reinstalled in the yard. The asbestos company, not the seller, set the tank upon a brick foundation, with two spaces underneath for the purpose of building a fire for direct heating. When thus changed the iron tank had surrounding it a layer of brick with an asbestos lining 1½ inches thick between the layer of brick and the tank proper, the brick and asbestos being built up to the height of the tank. There was also placed over the top of the tank a metal cover with a 6-inch vent hole, said to have been for the purpose of releasing any extra internal pressure created by gas or fumes. All this was done by the asbestos company, without the advice or knowledge of the appellee. So it may at once be seen from the evidence that the tank was constructed and sold by appellee to be used in an entirely different method or manner than as later used by the asbestos company. It is clearly shown, even by the evidence of appellant, that the content of the tank was to be heated by oil fuel, with steam running through the coils. The blueprint furnished by appellee to the asbestos company showed the plan of construction, and exemplified couplings for these coils.

It was then shown that the entire set-up was materially altered by the operating company. It is stated that after the tank had been used for several days with the coils and the oil fuel, it was found that not enough heat could be produced by its use in this manner to

properly melt the asphalt. It was then determined by the asbestos company to build a fire under the tank, which it did. The smoke or fumes then became objectionable and it was moved into the yard. Later one of the coils broke and was not replaced. It seems from that time on until the rupture of the tank, the heating of the compound had been accomplished by heat from coal and wood, applied directly under the bottom of the tank. Of these changes in the mode or method of heating, it clearly appears appellee was not advised. On the day of the explosion one witness says that Manual was instructed to begin his fire about 8:30 a. m., as the asphalt was wanted about 1:30 or 2:00 p. m. It took the compound about four hours, with the method used, to be brought to the proper consistency. Manual had been firing the tank for about three or four months, and had been told several times not to start his fire too rapidly; to start slowly and gradually increase the heat. When he was being taken to the hospital he said that he had "gotten it too hot; had pushed it too hard."

On this particular morning there was 2 feet or more of the congealed mass of compound in the tank. No heat had been under the mass for several days. The mass was so hard "it could only be broken with an ax." The tank was built according to written and verbal order, by making the bottom sheet wider and longer than the inside dimensions of the tank; this bottom piece was lapped or angled over the sides and ends and welded. When the rupture occurred it caused a breakage of about 24 inches along one side of the tank, through or near the weld. There were other breaks, but it is not made plain whether they were caused by the explosion, or by the later moving of the tank from its foundation to a nearby field, but this is immaterial.

Much expert proof was introduced by both sides on the question of welding. By appellant, to show that it was not a perfect welding job; by appellee to show that it was. Some expert proof also went to the theory that, since the furnishing company knew that the tank was to be used in heating asphalt by the application of heat to a very high and intense degree, it should have riveted the edges, or should have both welded and riveted.

As we view the question before us, we are compelled to take the position that, since it is definitely shown that the tank was furnished by appellee on a written order of the asbestos company, and with such appli-

ances and connections as would permit its use by the application of heat diffused through coils, and the asbestos company on its own initiative undertook to and did construct and use an entirely different sort of tank, with entirely different manner of heating, this testimony serves no purpose. It is shown in the proof that the use of the coils in heating the compound would avoid expansion; would also avoid warping, as a direct application of heat would and did cause, according to proof.

We need not go into the law in regard to the liability of a manufacturer to a third person, when an imminently dangerous machine is sold to one person and used by a third, with injurious results to the servant. That law is well stated in the case of Payton's Adm'r v. Childers' Electric Company, 228 Ky. 44, 14 S. W. (2d) 208, in which are included many citations.

It is shown by appellee and agreed to by the asbestos company, that other tanks furnished it by appellee of the same type and character as was the exploded one, and heated and used by the asbestos company in the manner as originally constructed, had been satisfactory. As we view this case the proximate cause of the injury was the contributory negligence of Manual, or the negligence of the asbestos company in making the radical change above described. We need not, however, decide that question. If the case were before us for review on that sole question, we would be compelled to hold that no negligence on the part of appellee was even remotely shown, and would not go far afield in holding that appellee was entitled to a directed verdict at the close of plaintiff's evidence. However, the only question argued is that there was permitted to be introduced evidence to show that at the time of the explosion the tank in question was being heated in a manner different from that contemplated by the asbestos company and appellee, and that this change was the proximate cause of the injury. This is true, as shown by the record, but it is also true that such proof as is complained of was in the main produced by appellant through the witness Seaton, who was the superintendent of the asbestos company at the time of the purchase, original installation, the change of method, and the explosion. He first gave his deposition as if on cross, and was later introduced by appellant. Such other testimony as bore on this theory was given without objection or exception.

It is also urged that, though this evidence was heard, the court erroneously instructed the jury (in addition to others not complained of), in substance, that if they should believe from the evidence that at the time of the injury defendant did not know that the tank was being heated in the manner in which it was, and the rupture in the tank thereby occurred, or if the tank manufactured by defendant was so constructed as to be heated in a manner other than that in which it was being heated, and the rupture came about from this cause, the law was for the defendant.

Again, we are relieved from entering into a discussion as to whether or not the instruction, as above stated, was or not a correct exposition of the law. We note from the record and bill of exceptions that all the instructions were given by the court sua sponte and without there being noted any objection or exception. It is to be further noted, as far as the record discloses that no instructions were offered by appellant. In this state of case the rule is that we cannot review if there is no objection, or, in a case where the court gives the instructions on his own motion, there is no exception. Page's Adm'r v. Scott, 245 Ky. 648, 54 S. W. (2d) 23; Shawnee Sanitary Milk Company v. Fulkerson's Garage, 258 Ky. 639, 79 S. W. (2d) 229.

But it is insisted that the simple plea of contributory negligence did not authorize the introduction of the evidence on the lack of knowledge of appellee as to the use of the tank at the time of the explosion, or that it was not to be used as we have described. The point is made that the proof presented, and the instructions, allowed consideration of that proof on a material issue not raised or tendered in the pleadings. Again, we are relieved of the necessity of determining just what nature of proof may be introduced by defendant on the general or simple plea of contributory negligence. We merely refer to section 129 of our Civil Code of Practice, which provides:

"No variance between pleadings and proof is material, which does not mislead a party to his prejudice, in maintaining his action or defense upon the merits. A party who claims to have been so misled must show that fact to the satisfaction of the court; and, thereupon, the court may order the pleading to be amended, upon such terms as may be just."

No such showing was made below, and for the first time it is claimed here by appellant, "that a material issue had not been joined." One of two things is bound to be true, either on trial the appellant did not conceive the variance to be material, or, if it was looked upon as material, the right of appellant was then and there waived.

Judgment affirmed.